UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KMART CORPORATION

PLAINTIFF

v.  CIVIL ACTION NO. 1:11-CV-00103-GHD-DAS

THE KROGER CO.; E & A SOUTHEAST
LIMITED PARTNERSHIP; FULTON IMPROVEMENTS, LLC;
KANSAS CITY RAILWAY COMPANY; CITY OF CORINTH;
THE UNITED STATES OF AMERICA,
FEDERAL EMERGENCY MANAGEMENT AGENCY  DEFENDANTS

<u>MEMORANDUM OPINION GRANTING MOTION TO DISMISS</u>

Presently before the Court is a motion to dismiss [30] filed by Defendant, the United States of America, Federal Emergency Management Agency ("FEMA"). The motion to dismiss is filed pursuant to Rule 12(b)(1), and alternatively, Rule 12(b)(6), of the Federal Rules of Civil Procedure. FEMA argues that this Court lacks subject-matter jurisdiction, as Congress has not waived the United States' sovereign immunity for the claims. Alternatively, FEMA argues that the complaint fails to set forth a claim upon which relief may be granted. Plaintiff Kmart Corporation ("Kmart") opposes the motion. Upon due consideration, the Court finds the motion should be granted pursuant to Rule 12(b)(1).[1]

*A. Factual and Procedural Background*

In May of 2010, flash floods hit portions of Arkansas, Kentucky, Tennessee, and north Mississippi, resulting in extensive property damage and several fatalities. This case concerns the

---

[1] Because the Court finds it has no subject-matter jurisdiction over the case *sub judice*, it need not consider whether Plaintiff's claims against FEMA survive the Rule 12(b)(6) standard.

1

flood damage sustained by a Kmart store located at 118 Highway 72 in Corinth, Mississippi. From the evening of May 1, 2010, until the early morning hours of May 2, 2010, rain pelted the Corinth area, causing a nearby creek to flood. Kmart maintains that the rising water flowed in back of its Corinth store, pressing against the rear doors and finally breaking them open and rushing into the store. Kmart alleges the store was extensively damaged by the flooding.

On May 2, 2011, Plaintiff Kmart Corporation ("Kmart") commenced this suit against the City of Corinth; E & A Southeast Limited Partnership; Fulton Improvements, LLC; Kansas City Southern Railway Company; The Kroger Co.; and FEMA. In lieu of answering the complaint, FEMA filed a motion to dismiss [30] pursuant to Rule 12(b)(1), and alternatively, Rule 12(b)(6), of the Federal Rules of Civil Procedure. As the motion solely challenges Kmart's claims against FEMA, the Court will limit its analysis to those claims.[2]

The Corinth Kmart store and the surrounding area are within the designated flood limits of Elam Creek, a large tributary creek that heads up approximately six miles north of the site and

---

[2] Kmart's claims against the other Defendants are summarized as follows.

First, Kmart alleges the Kroger store that is adjacent to the Corinth Kmart store is in a floodway, and that the Kroger store's location in the floodway caused a displacement of water, rise in the water level, and alteration of the water flow from standing water to rushing, forceful water. Kmart alleges that the Kroger store was built in a floodway that existed at the time of its construction. Kmart alleges the Kroger store should have been leveled, but was instead allowed to remain in the floodway by the issuance of a LOMR by FEMA. Kmart further avers that the LOMR was secured by the participation of the City of Corinth; The Kroger Co.; and E & A Southeast Limited Partnership, the Kroger store's then-landlord.

Second, Kmart alleges that the City of Corinth contributed to the flood damage by operating a landfill for dirt adjacent to the Kmart store that contributed to water displacement and a heightened water level in the vicinity of the Kmart store.

Third, Kmart alleges that the Kansas City Southern Railway failed to maintain a railroad underpass in the vicinity of the Kmart store, and contributed to the flood damage by leaving the underpass cluttered with debris, which prevented water flow and displacement.

Finally, Kmart asserts a breach of contract claim against Fulton Improvements, LLC, the Kmart store's landlord at the time of the flood damage. Kmart alleges that Fulton Improvements, LLC is responsible for the flood damage per the terms of the lease agreement between the Kmart store and Fulton Improvements, LLC. Kmart further alleges that Fulton Improvements, LLC failed to take protective measures to prevent the flood damage.

2

flows south to drain at the site of the Kmart building. Kmart alleges that although its Corinth store is located in the floodplain, about one-half of the adjacent Kroger store is in the floodplain and floodway. Kmart alleges that Kroger was allowed to construct its store in the regulatory floodway and was then allowed to remain in the regulatory floodway after FEMA approved of the action by issuing a Letter of Map Revision ("LOMR") in 2005, thirteen years after the Kroger store's construction. The LOMR removed the Kroger store from the floodway due to "Inadvertent Inclusion in the Floodway." Kmart maintains that the floodway was drawn correctly in the initial map and was correct to include half of the Kroger store in the floodway. Kmart avers that Kroger's presence in the floodway both "caused a displacement of water and a rise in the water level," and "altered the water flow from standing water to a rushing, forceful water flow," which "resulted in extensive flood damages" to the Kmart store. Pl.'s Compl. ¶ 47. Kmart further alleges that the Corinth store closed its doors for flood-related repairs in May of 2010, and did not reopen for business until February of 2011. On November 1, 2010, Kmart filed a Standard Form 95 with FEMA outlining the flood damages sustained by its Corinth store, pursuant to the Federal Tort Claims Act (the "FTCA"). FEMA denied the claim by a letter dated January 4, 2011, and informed Kmart of its right to commence suit against FEMA in federal district court.

On April 27, 2011, the Corinth Kmart store experienced another flood event, and alleges it was forced to incur expenses to prevent further flood damage due to Kroger's continued presence in the floodway. *Id.* ¶ 49.

### B. *FEMA Overview*

In analyzing whether FEMA is immune from this suit, it is helpful to provide a general overview of FEMA itself, and the role FEMA has played in the events giving rise to this suit.

3

FEMA provides federal disaster relief assistance to state and local governments when state and local resources are determined to be insufficient in the wake of a "major disaster." *See* 42 U.S.C. § 5170; 44 C.F.R. §§ 206.3(a), 206.36.

> "Major disaster" means any natural catastrophe (including any hurricane, tornado, storm, high water, winddriven water, tidal wave, tsunami, earthquake, volcanic eruption, landslide, mudslide, snowstorm, or drought), or, regardless of cause, any fire, flood, or explosion, in any part of the United States, which in the determination of the President causes damage of sufficient severity and magnitude to warrant major disaster assistance under this chapter to supplement the efforts and available resources of States, local governments, and disaster relief organizations in alleviating the damage, loss, hardship, or suffering caused thereby.

42 U.S.C. § 5122(2). Pertinent to this case is FEMA's role with respect to flood response activities, and particularly, with respect to FEMA's primary responsibility for mapping flood hazards as part of the National Flood Insurance Program (the "NFIP").

> In addition to providing flood insurance and reducing flood damages through floodplain management regulations, the NFIP identifies and maps the Nation's floodplains. Mapping flood hazards creates broad-based awareness of the flood hazards and provides the data needed for floodplain management programs and to actuarially rate new construction for flood insurance.

FEMA, The NFIP, http://www.fema.gov/about/programs/nfip/index.shtm.

Congress established the NFIP with the enactment of the National Flood Insurance Act of 1968 (the "NFIA"), 42 U.S.C. § 4001 *et seq.* Congress found that flood disasters "have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources," 42 U.S.C. 4001(a)(1), and that "despite the installation of preventive and protective works and the adoption of other public programs designed to reduce losses caused by flood damage, these methods have not been sufficient to protect adequately against growing exposure to

4

future flood losses," *id.* § 4001(a)(2). Congress further found that "as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures." *Id.* § 4001(a)(3). The NFIA was enacted to "encourage State and local governments to make appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses," as well as "guide the development of proposed future construction, where practicable, away from locations which are threatened by flood hazards." *Id.* § 4001(e).

FEMA must publish proposed base flood elevation determinations ("BFEs") in the Federal Register and twice in a prominent local newspaper, as well as directly notify the community. *See* 42 U.S.C. § 4104. The NFIA allows affected communities and owners or lessees of real property within the community to challenge the results of the flood hazard study if they believe their property rights may be adversely impacted by the BFEs. The "sole relief" available to a successful appellant is modification of the proposed BFEs. *Id.* § 4104(b). The Flood Insurance Rate Map (the "FIRM") becomes effective no later than six months after FEMA issues its final BFE determination. *See* 44 C.F.R. § 67.10.

Subsequently, it may become necessary to make revisions to the maps based on new or revised scientific or technical data that shows changes to the floodplain through the issuance of a LOMR. The LOMR itself does not authorize, permit, fund, license, zone, or otherwise approve construction of any projects in the floodplain. FEMA's Reply Supp. Mot. Dismiss [45] at 3; Norton Decl. [45-1] ¶ 8; Stearrett Decl. [45-1] ¶ 4. With this overview in mind, the Court turns to the motion to dismiss.

5

### C. Rule 12(b)(1) Motion to Dismiss Standard

FEMA's motion to dismiss asserts both a Rule 12(b)(1) and Rule 12(b)(6) challenge. A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits, as addressing Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

"[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted)). In such a consideration, the court must

> take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. . . . [U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citations and internal quotation marks

omitted). A court should grant the motion only if it seems certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n*, 143 F.3d at 1010).[3]

### D. Sovereign Immunity

Courts may not exercise subject-matter jurisdiction in a suit against the United States unless the United States has waived immunity and consented to suit. *See United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S. Ct. 767, 85 L. Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 501, 60 S. Ct. 659, 84 L. Ed. 888 (1940); *Bank One Tex. v. Taylor*, 970 F.2d 16, 33 (5th Cir. 1992), *cert. denied*, 508 U.S. 906, 113 S. Ct. 2331, 124 L. Ed. 2d 243 (1993). A waiver of sovereign immunity is strictly construed and thus must be unequivocally expressed by Congress. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980); *Sherwood*, 312 U.S. at 590, 61 S. Ct. at 771; *Interfirst Bank Dallas v. United States*, 769 F.2d 299, 306 n.10 (5th Cir. 1985), *cert. denied*, 475 U.S. 1081, 106 S. Ct. 1458, 89 L. Ed. 2d 716 (1986). "[N]o suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued." *Lundeen v. Mineta*, 291 F.3d 300, 304 (5th Cir. 2002). Plaintiffs must show such consent, as plaintiffs assert federal jurisdiction is proper. *See id.*

### E. Discussion and Analysis

FEMA maintains in its motion to dismiss [30] that the following grounds of immunity preclude this suit: (1) 33 U.S.C. § 702c of the Flood Control Act of 1928 (the "FCA") exempts the United States from liability for flood damage; (2) no cause of action exists under the NFIA; and (3)

---

[3] The Court need not set forth the applicable Rule 12(b)(6) standard, as the motion to dismiss was decided pursuant to Rule 12(b)(1).

no cause of action exists under the FTCA, as no analogous liability exists under state law, and flood mapping is a discretionary function insulated from liability. The Court will examine each of these alleged immunity grounds in turn.

*1. 33 U.S.C. § 702c of the FCA*

First, FEMA contends Plaintiff's claims are barred by 33 U.S.C. § 702c of the FCA, which provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place. . . ." 33 U.S.C. § 702c. Section 702 "affirms the government's sovereign immunity in the flood-control context." *In re Katrina Canal Breaches Litig.*, 673 F.3d 381, 387 (5th Cir. 2012). Although the statute's sweep of sovereign immunity in the flood-control context is broad, it is not all-encompassing.[4] The Fifth Circuit "recognize[s] immunity for any flood-control activity engaged in by the government, even in the context of a project that was not primarily or substantially related to flood control." *Id.* at 390. "[T]he terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *United States v. James*, 478 U.S. 597, 605, 106 S. Ct. 3116, 92 L. Ed. 2d 483 (1986). However, "the government enjoys immunity only from damages caused by floodwaters released on account of flood-control activity or negligence therein." *In re Katrina*

---

[4] Judge Easterbrook has explained:

> The "management of a flood control project" includes building roads to reach the beaches and hiring staff to run the project. If the Corps of Engineers should allow a walrus-sized pothole to swallow tourists' cars on the way to the beach, or if a tree-trimmer's car should careen through some picnickers, these injuries would be "associated with" flood control. They would occur within the boundaries of the project, and but for the effort to curtail flooding the injuries would not have happened. Yet they would have nothing to do with management of flood waters, and it is hard to conceive that they are "damage from or by floods or flood waters" within the scope of § 702c.

*Fryman v. United States*, 901 F.2d 79, 81 (7th Cir. 1990).

*Canal Breaches Litig.*, 673 F.3d at 387 (citing *Cent. Green Co. v. United States*, 531 U.S. 425, 121 S. Ct. 1005, 148 L. Ed. 2d 919 (2001) and *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971)). Thus, for Section 702c to preclude this suit, the suit must concern either flood-control activity or related negligence.

The suit concerns the issuance of a LOMR, a revision to the initial flood control mapping project by FEMA. Kmart argues that the issuance of the LOMR was not a flood-control activity for purposes of Section 702c, and thus that FEMA is not immune from this suit. Kmart contends:

> The United States's argument ignores the fact that Kmart did not incur flood damages as a result of the initial flood control mapping project for the City of Corinth or the property surrounding its store. Rather, Kmart incurred damages due to a **subsequent** LOMR that was improperly granted by FEMA thirteen years after the Kroger store was constructed. More important, the damage was caused by FEMA approving the Kroger for **removal** from a floodway. That action was the opposite of a flood control activity.

Pl.'s Resp. Opp'n to FEMA's Mot. Dismiss [39] at 22 (emphases in original).

FEMA argues that the issuance of the LOMR is a flood control initiative which precludes liability under Section 702c. Indeed, courts have held that flood control involves any expenditure of funds related to flood control. *See, e.g., Nat'l Mfg. Co. v. United States*, 210 F.2d 263 (8th Cir. 1954) (forecasting floods are part of flood control project); *Britt v. United States*, 515 F. Supp. 1159, 1162 (M.D. Ala. 1981) (preparation and dissemination of flood hazard map pursuant to the NFIA is an integral part of a congressionally mandated flood control initiative). It follows, then, that the LOMR issued by FEMA in this case was prepared and disseminated pursuant to congressionally mandated flood control initiatives, specifically the NFIA and the Flood Disaster Protection Act of 1973, Pub. L. 93-237, 87 Stat. 975 (1973), and that the issuance of the LOMR is an integral part of these initiatives. It further follows that FEMA is immune from this suit under

9

Section 702c of the FCA. However, this Court finds that FEMA is immune from suit on other grounds.

*2. 42 U.S.C. § 4104(g) of the NFIA*

Second, FEMA maintains that Plaintiff's claims are barred by the limited waiver of sovereign immunity found in the NFIA, 42 U.S.C. § 4104(g). Kmart concedes in its response to the motion to dismiss that the NFIA does not provide a cause of action for its damages, and maintains that instead its claims against FEMA are brought under the FTCA. FEMA argues in reply, however, that "the NFIA precludes Plaintiff's claim under the FTCA," as the NFIA "makes clear that Congress intended for the appeal procedures provided at 42 U.S.C. § 4104 to be the exclusive avenue for challenging a flood mapping action." FEMA's Reply Supp. Mot. Dismiss [45] at 10–11.

The NFIA waives sovereign immunity for challenges concerning flood insurance and flood elevation determinations. The NFIA provides in pertinent part:

> Any appellant aggrieved by any final [flood elevation] determination of the Director upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination . . . . During the pendency of any such litigation, all final determinations of the Director shall be effective for the purposes of this chapter unless stayed by the court for good cause shown.

42 U.S.C. § 4104(g); *see Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 160 (5th Cir. 1981). These challenges are limited to whether FEMA's proposed flood elevations are scientifically or technically incorrect. 42 U.S.C. § 4104(b). Obviously, then, a challenge to a flood elevation determination falls squarely within the ambit of the NFIA. Courts have held that LOMRs are flood elevation determinations contemplated by the NFIA. *See, e.g., Great Rivers Habitat*

*Alliance v. FEMA*, 615 F.3d 985, 987–89 (8th Cir. 2010); *Coal. for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1102 (E.D. Cal. 2011). However, the Court finds that FEMA is immune from suit on other grounds.[5]

### 3. Federal Tort Claims Act

Finally, FEMA contends that no waiver of sovereign immunity exists under the FTCA, as no analogous tort exists under Mississippi law and FEMA's issuance of the LOMR is subject to the discretionary function exception. The FTCA authorizes suits against the United States sounding in state tort for money damages arising from:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA's sovereign immunity waiver provides as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. Thus, for Kmart to have viable claims against FEMA under the FTCA, a tort claim in the same manner must exist under Mississippi state law.

---

[5] FEMA contends that Kmart's claims against it are time-barred, as the LOMR in question was issued sometime in 2005, and Kmart failed to appeal the proposed base flood elevations within sixty days, as required by the NFIA. Kmart argues in response that FEMA failed to follow the requirements of the statute, including performing a required flood study, providing public notice, notifying affected property owners, and reviewing and approving the LOMR issued to Kroger. The Court does not reach this issue, but notes that FEMA informed Kmart by a letter dated January 4, 2011, that it was denying Kmart's administrative claim against FEMA as an improper claim under the FTCA and that "if [Kmart] is dissatisfied with this determination, [Kmart] may file suit in an appropriate United States District Court not later than six months after the date of mailing of this notification of denial." *See id.* at 25. Kmart then filed suit on May 2, 2011, well within six months after the date FEMA's denial letter was mailed.

Kmart argues that its cause of action is permitted by the FTCA because it is based on negligent actions and omissions of FEMA's employees that allowed an encroachment to remain in a floodway, which ultimately caused damage to Kmart. Kmart argues that "[t]he analogous state law liability at issue in this matter is not limited to whether a private individual would be held liable for negligent enforcement of regulations," but "[r]ather, . . . whether a private individual could be held liable under Mississippi state law for flood damages incurred by adjacent property owners after the individuals placed a building in a floodplain." Pl.'s Resp. Opp'n to FEMA's Mot. Dismiss [39] at 24. Kmart maintains that under Mississippi law, an individual owes a duty of reasonable care to avoid injury to nearby property owners, and "[t]here is no doubt that a private individual would be held liable for flood damages caused by the placement of a building in a floodplain, and the United States' improper attempt to narrow the scope of the analogous state law liability in this matter should be rejected." *Id.* at 25.

FEMA argues in reply that "[a] private person could not develop a FIRM or update a FIRM," nor "ensure adequate safeguards and land use restrictions are implemented to minimize future losses of life and property in order to provide subsidized flood insurance." FEMA's Reply Supp. Mot. Dismiss [45] at 12. FEMA maintains that "[t]he challenged conduct here is uniquely governmental and based on a federal statute, the NFIA" and Kmart's claim is not actionable. *Id.* Kmart's claims against FEMA are that FEMA improperly issued the LOMR to Kroger allowing it to remain in the floodway, and that FEMA violated various provisions of the NFIA. "As long as state tort law creates the relevant duty, the FTCA permits suit for violations of federal statutes and regulations." *Freeman v. United States*, 536 F.3d 326, 335 (5th Cir. 2009); *see Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (en banc). However, courts are not allowed to "base a

waiver simply upon a finding that local law would make a state or municipal entity liable." *United States v. Olson*, 546 U.S. 43, 44, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005). "[T]he United States waives sovereign immunity 'under circumstances' where local law would make a '<u>private person</u>' liable in tort." *Id.* (emphasis in original). The Fifth Circuit has held that no federal private right of action exists for alleged violations of the NFIA. *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 253 (5th Cir. 2008) (citing *Till*, 653 F.2d at 161–62)); *Saadat v. Landsafe Flood Determination, Inc.*, 253 F. App'x 343, 344 (5th Cir. 2007). Of course, whether a state law cause of action exists for violations of the NFIA is a separate question, and one that has not been answered by the Mississippi Supreme Court. However, state courts that have considered the issue have found that no analogous state tort existed. *See, e.g., Lukosus v. First Tenn. Bank Nat'l Ass'n*, No. 02-84, 2003 WL 21658263, at *2 (W.D. Va. July 9, 2003); *Mid-Am. Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of S. Holland*, 515 N.E.2d 176 (Ill. App. 1987); *R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Assoc.*, 315 N.W.2d 284, 290 (N.D. 1982). And Mississippi district courts making an *Erie* guess as to how Mississippi courts would rule on the issue have refused to allow a negligence claim based on flood zone determinations, finding any alleged duty to provide correct flood zone determinations arises out of the NFIA, and not from any state law. *See Ellis v. Countrywide Home Loans, Inc.*, 541 F. Supp. 2d 833, 837 (S.D. Miss. 2008); *Kearney v. First Horizon Home Loan Corp.*, No. 1:07cv121 LG-JMR, 2007 WL 4302963 (S.D. Miss. Dec. 6, 2007); *Lusins v. First Am. Real Estate Solutions of Tex., L.P.*, No. 1:06cv646, 2007 WL 1745625 (S.D. Miss. June 14, 2007). It is not necessary for this Court to make an *Erie* guess as to how Mississippi courts would rule on this issue, however, as even if this Court allowed Kmart to assert claims against FEMA finding that a private cause of action existed under state law, the FTCA

excepts discretionary functions and duties from the waiver of sovereign immunity. *See* 28 U.S.C. § 2690(a).

FEMA also maintains Kmart's claims against it are barred, because the claims concern flood mapping, a discretionary function excepted from liability under 28 U.S.C. § 2680(a) of the FTCA. To survive the motion to dismiss on this ground, Kmart "must advance a claim that is facially outside the discretionary function exception." *See St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 n.3 (5th Cir. 2009) (also noting that the law is unclear on which party bears the burden of proof with respect to the whether a discretionary function exception to a waiver of sovereign immunity applies). The FTCA provides that the waiver of sovereign immunity does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The discretionary function exception applies only to acts involving an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.' " *Id.* at 322, 111 S. Ct. 1267 (quoting *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954). "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the exception applies." *Id.*

(citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984), *reh'g denied*, 468 U.S. 1226, 105 S. Ct. 26, 82 L. Ed. 2d 919 (1984) (internal quotation marks omitted)). The exception is intended to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323, 111 S. Ct. 1267 (citing *Varig Airlines*, 467 U.S. at 814, 104 S. Ct. 2755) (internal quotation marks omitted)). Under *Gaubert*, to determine whether FEMA's actions concerning the issuance of the LOMR to Kroger were discretionary and thus preclude liability, the Court must first examine whether there was a prescribed course of conduct for FEMA to follow in statutes, regulations, or policies; and second, whether FEMA's actions were susceptible to policy judgment.

### (1) Was there a statute, regulation, or policy that specifically prescribed the course of action for FEMA to follow?

"If a statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Freeman*, 556 F.3d at 337. However, "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' ... 'the employee has no rightful option but to adhere to the directive,' " and thus the discretionary function exception does not apply. *Gaubert*, 499 U.S. at 322, 111 S. Ct. 1267 (quoting *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954).

FEMA maintains that the discretionary function exception applies even in the absence of a conscious policy decision, as long as the decisional area is susceptible to policy analysis. FEMA further maintains that "[f]lood mapping requires FEMA to make determinations where scientific and technical correctness is often a matter of degree rather than absolute." FEMA's Mem. Law

15

Supp. Mot. Dismiss [31] at 16. FEMA contends that it "issues LOMRs based upon scientific studies utilizing the expertise of its engineers and its own judgment." *Id.* FEMA maintains that no mandatory statute, regulation, or policy prevents FEMA from issuing or denying a LOMR; the NFIA explicitly delegates that authority to FEMA. FEMA argues that a specific course of action is not provided by statute or regulation that FEMA must adhere to when analyzing scientific and technical data, and further that "[t]he decision to grant or deny a map change or modification clearly involves an element of judgment." FEMA's Reply Supp. Mot. Dismiss [45] at 13.

Kmart argues in response that the NFIA specifically provides a course of action that FEMA failed to follow. Kmart cites provisions of the NFIA, including Section 4104, which mandates published notice of flood elevation determinations and maintains that FEMA failed to follow this procedure. Kmart further maintains that FEMA's actions in issuing the LOMR for the Kroger store were specifically delineated in the Code of Federal Regulations. However, Kmart fails to identify any specific, nondiscretionary function or duty undertaken by FEMA in issuing the LOMR, and instead cites several regulatory provisions containing language that is too general to specifically prescribe the course of action for FEMA to follow. Kmart cites provisions that contain directives to the affected community, not to FEMA ("[a] community's base flood elevations may increase or decrease resulting from physical changes affecting flooding conditions"; "a community shall notify the Administrator of the changes by submitting technical or scientific data," 44 C.F.R. § 65.3; *see generally* § 65). Kmart cites regulations that pertain to FEMA, but these regulations bestow discretion on the agency (referring to FEMA's review of information to "evaluate" a community's "request[ed] changes to any of the information shown on an effective map that does not impact flood plain or floodway delineations," 44 C.F.R. §§ 65.5(a),

16

65.4). With respect to the identification of flood-prone areas, the NFIA provides that "the Director [of FEMA] is authorized to consult with" officials to identify and publish information relating to flood hazard areas, and establish or update flood-zone risk data. *See* 42 U.S.C. § 4101(a) (emphasis added). This language, particularly "is authorized," indicates Congress intended FEMA to exercise discretion in such matters. *See St. Tammany Parish, ex rel. Davis*, 556 F.3d at 324 (such words as "may" and "is authorized" indicate agency's discretion); *see also Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988). The NFIA further provides that "[o]nce during each 5-year period . . . or more often as the Director determines necessary, the Director shall assess the need to revise and update all floodplain areas and flood risk zones . . . ." 42 U.S.C. § 4101(e) (emphases added). This language similarly indicates FEMA's discretion in these matters. *See Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1993) ( "shall" followed by "from time to time take such action as may be necessary" indicates agency's discretion). Particularly pertinent to this case are the following NFIA provisions:

> The Director shall revise and update any floodplain areas and flood-risk zones—
>
> (1) upon the determination of the Director, according to the assessment under subsection (e) of this section, that revision and updating are necessary for the areas and zones; or
>
> (2) upon the request from any State or local government stating that specific floodplain areas or flood-risk zones in the State or locality need revision or updating, if sufficient technical data justifying the request is submitted and the unit of government making the request agrees to provide funds in an amount determined by the Director, but which may not exceed 50 percent of the cost of carrying out the requested revision or update.

42 U.S.C. § 4101(f) (emphases added). The language, particularly the emphasized portions, shows Congress's intent to leave flood mapping determinations to the discretion of FEMA.

17

### (2) Were FEMA's actions susceptible to policy judgment?

Although FEMA's actions concerning issuance of the LOMR involve an element of choice, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy," as "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See Ashford v. United States*, No. 10–40804, 2012 WL 695132, at *6 (5th Cir. Mar. 5, 2012) (quoting *Gaubert*, 499 U.S. at 323, 111 S. Ct. 1267 (internal quotation marks and citations omitted)).

FEMA contends that flood mapping determinations are based upon considerations of public policy, and cites the primary objectives of the NIFA: "to provide relief from the destruction caused by floods by making flood insurance generally available and reasonable premium rates and to require local jurisdictions to enact land use and control measures designed to guide the rational use of flood plains as a condition for the availability of Federally-subsidized insurance." FEMA's Mem. Law Supp. Mot. Dismiss [31] at 17 (citing S. REP. NO. 95-583, *reprinted in* 1973 U.S.C.C.A.N. 3217, 3218–3219). FEMA contends that each decision regarding the issuance of a LOMR "affects the economic efficiency of the [NFIP] and the social, and possibly political, satisfaction of committees impacted by FEMA's mapping determinations." *Id.* FEMA further contends that if the Court accepts Plaintiff's argument, "any error in flood mapping that FEMA made could result in liability. The purpose of flood mapping is to identify and publish all flood plain areas . . . which have special food hazards . . . and establish all flood-risk zone data . . . ." FEMA's Reply Supp. Mot. Dismiss [45] at 5. The Court finds FEMA's argument to be persuasive, and further holds that FEMA's actions or inactions regarding the issuance of the

LOMR are protected under the discretionary function exception to the FTCA. Thus, this Court has no subject-matter jurisdiction over Kmart's claims against FEMA, and such claims are properly dismissed.

### *F. Conclusion*

In sum, the NFIA and its regulations do not give rise to a mandatory duty. They instead permit discretionary, policy-oriented choices that cannot be the basis for the court's subject-matter jurisdiction. Hence, FEMA's motion to dismiss [30] is GRANTED for lack of subject-matter jurisdiction under Rule 12(b)(1).

THIS 11th day of June, 2012.

_____
SENIOR JUDGE