IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KMART CORPORATION                                                    PLAINTIFF

v.                                                   CIVIL ACTION NO. 1:11-CV-00103-GHD-DAS

THE KROGER CO.; E & A SOUTHEAST
LIMITED PARTNERSHIP; FULTON IMPROVEMENTS, LLC;
and KANSAS CITY SOUTHERN RAILWAY COMPANY                DEFENDANTS

## **MEMORANDUM OPINION DENYING PLAINTIFF'S MOTIONS FOR LEAVE TO FILE AMENDED REPORTS OF PLAINTIFF'S EXPERT, JOHN R. KREWSON**

Presently before the Court are two motions filed by Plaintiff Kmart Corporation: a motion to appeal [227] the United States Magistrate Judge's denial of its motion for leave to file the proposed amended report of its engineering expert, John R. Krewson, as well as a motion for leave [271] to file the newly proposed amended Krewson report.[1] Upon due consideration, the Court finds that both motions are not well taken and should be denied.

### *A. Factual and Procedural Background*

From the evening of May 1, 2010 until the early morning hours of May 2, 2010, heavy rain pelted the Corinth, Mississippi area, causing nearby Elam Creek to flood. On May 2, 2011, Plaintiff Kmart Corporation ("Kmart") filed this suit to recover for flood damage sustained by its Corinth store. Kmart brings this action against Defendants The Kroger Co. ("Kroger"); E & A Southeast Limited Partnership; Fulton Improvements, LLC; and Kansas City Southern Railway Company.[2] In its amended complaint, Kmart alleges that due to Defendants' acts and omissions,

---

[1] The Court notes that there are several pending *Daubert* motions by Defendants concerning Krewson's report and/or amended report. The Court will address those motions at a later date.

[2] Although Kmart also brought this action against the Federal Emergency Management Agency ("FEMA")

1

the flood water rose and flowed forcefully into the back of the Corinth Kmart store, causing extensive damage to the store. The Corinth Kmart store was closed for repairs from the time of the May 2010 flood until February 2011, when the store reopened for business. Kmart alleges in its amended complaint that on April 27, 2011 its Corinth store incurred additional costs to prevent subsequent damage from another anticipated flood event.

In the weeks following the flood, Kmart retained an expert, John R. Krewson, to assist with preparing its case. Accordingly, Krewson began his investigation, utilizing a computer program to discern the impact of the flood waters on the Kmart store. On September 20, 2012, Krewson prepared his initial report, wherein he opined that flood water and debris had forcefully rushed into the Kmart store, because the neighboring Kroger store was partially located over a regulatory floodway. On May 22, 2013, Defendants deposed Krewson. During the deposition, Defendants questioned Krewson about a discrepancy among water-flow rates used in one of the three computer runs he had conducted. Krewson recognized for the first time that his numbers were wrong, and consequently, Kmart realized for the first time that Krewson's opinions in his initial report were flawed.

Thus, on July 25, 2013, Kmart filed its motion for leave to file a proposed amended Krewson report. In that proposed report, Krewson restates his opinion that the presence of the Kroger store caused or contributed to the flood damages sustained by the Kmart store, but recalculates the estimated water level. The difference in the water level alters Kmart's entire theory of the case. Krewson opines that if the Kroger store had not been located partially in the

---

and the City of Corinth, both have since been dismissed from the case on immunity grounds. *See* Ct.'s Order [50] and Mem. Op. [51] Granting FEMA's Mot. Dismiss; Ct.'s Order [209] and Mem. Op. [210] Granting City of Corinth's Mot. Dismiss.

regulatory floodway, Kmart would have been exposed to <u>standing</u> water—not <u>rushing, flowing</u> water and debris as he had originally thought. Krewson's July 23, 2013 proposed amended report also presents a new theory of liability that potentially impacts Defendant Kansas City Southern Railway Company.

On August 21, 2013, the United States Magistrate Judge entered an Order [213] denying Kmart's motion for leave to file the proposed amended Krewson report, finding that Kmart failed to show good cause to modify the scheduling order and allow the submission of the late report. On August 27, 2013, the undersigned entered an Order denying Kmart's alternative request to continue the trial date. Subsequently, Kmart filed the present motion to appeal [227] the Magistrate Judge's denial of leave. Defendants filed responses to the motion to appeal.

On September 27, 2013, the undersigned entered an Order [243] stating that the Court would consider a limited amendment of only mathematical errors to the Krewson report. Kmart filed another motion for leave 271] to file a newly proposed amended Krewson report and attached the same for the Court's consideration. Defendants filed responses, and Kmart filed a reply. The briefing on these matters was complete on November 18, 2013.

### *B. Analysis and Discussion*

Due to the complexity of the issues presented, the Court will first address Kmart's motion to appeal the Magistrate Judge's denial of Kmart's request to submit the first amended Krewson report and will then address the issues presented by the newly proposed amended Krewson report.

### Kmart's Motion to Appeal Magistrate Judge's Denial of Kmart's Motion for Leave to File Proposed Amended Krewson Report

When a party files objections to a Magistrate Judge's Order, the Court must make a *de novo* determination of those portions of the Order to which objection is made. *Habets v. Waste*

*Mgmt., Inc.*, 363 F.3d 378, 381 (5th Cir. 2004). The Magistrate Judge's order may only be overturned if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1).

When a party seeks to modify a scheduling order, the request should only be granted if the party shows "good cause" for the proposed modification. FED R. CIV. P. 16(b)(4). The Fifth Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 F. App'x 483, 487–88 (5th Cir. 2013) (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala. N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (in turn quoting 6A CHARLES ALAN WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990))). With all the foregoing in mind, the Court turns to the issues raised in Kmart's motion for leave to file the proposed amended report.

The Magistrate Judge denied Kmart's motion for leave to file the proposed amended Krewson report based on the Magistrate Judge's analysis of four factors: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *See Reliance Ins. Co. v. La. Land and Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). In analyzing these four factors, the Magistrate Judge found that Kmart failed to show good cause for the proposed submission. The Magistrate Judge maintained in particular that the first and third factors strongly weighed against granting the motion for leave, and overall found that the motion for leave to file the amended Krewson report should be denied.

Kmart contends that the Court should set aside the Magistrate Judge's Order, because the Magistrate Judge erred in ruling that Kmart failed to demonstrate good cause to modify the scheduling order. Defendants argue in response that the Magistrate Judge's ruling was correct and should be upheld. The Court examines each of the four good-cause factors as follows.

**1. Explanation of Failure to Submit Timely Amended Expert Report**

First, Kmart challenges the Magistrate Judge's finding that Kmart failed to make a good-cause explanation for its failure to submit a timely amended Krewson report. Kmart maintains that neither Kmart nor Krewson discovered the error in Krewson's calculations and models until Krewson's deposition, by which time Kmart's expert deadline had already passed, and that once Kmart discovered the error, it immediately began working to correct the error. Kmart contends that it has demonstrated good cause for its failure to timely submit the proposed amended report.

The Court finds that the Magistrate Judge's analysis on Kmart's reasons for the late amended report is thorough and well taken. Indeed, Krewson had from September 2012 (when his initial report was submitted) until April 2013 (when he was designated as an expert) to discover his errors, which involved differences in flow rates used in the different computer runs and the resulting discrepancy in flood-water levels. Krewson's errors in his initial report were substantial, and Kmart has not satisfied this Court that it could not have discovered the errors earlier in the case with due diligence. Further, the proposed amended report presents what appears to be a new theory of recovery against Defendant Kansas City Southern Railway Company based on a photograph that was produced to Kmart in October of 2012. The Magistrate Judge did not abuse his discretion, nor form a conclusion contrary to law, when he determined that

Kmart had failed to provide a sufficient explanation for its failure to timely submit the initial amended report.

## 2. Prejudice Resulting from Submission of Amended Expert Report

Second, Kmart challenges the Magistrate Judge's finding that Kmart failed to show that no substantial prejudice would result from allowing the testimony. Kmart maintains that Defendants will not suffer serious prejudice if Kmart's motion for leave is granted, because the report does not impact Kmart's theory of the case. Kmart further maintains that even if its motion for leave is ultimately denied, Defendants will have to re-run their models, which rely on the flawed data of Krewson's initial report. Kmart argues that no prejudice would result from the late submission because Kmart would produce Krewson for a deposition and pay deposition-related costs so that Defendants could question him about his proposed amended report.

The Court finds that the Magistrate Judge's conclusions with respect to the prejudice factor are well taken. As the Magistrate Judge states, Krewson's proposed amended report presents a new theory of liability concerning Defendant Kansas City Southern Railway Company based on the photograph that was produced to Kmart in October of 2012, but inadvertently not shown to Krewson until his May 22, 2013 deposition. Allowing an amendment to the report positing a new theory of liability at this late juncture in the case would be prejudicial to the Defendants. The costs of these measures would include more than those associated with re-deposing Krewson. Defendants' counsel would encounter attorney's fees for each Defendant to review Krewson's proposed amended report, as well as costs in preparing for the deposition, traveling to the deposition, acquiring a deposition transcript, compensating experts for attending the deposition and reviewing Krewson's new report, compensating each of Defendants' engineering experts for

rebutting Krewson's new report in the form of their own amended expert reports, as well as the already incurred costs of drafting motions based on the initial report. Given all of the foregoing, the Court finds that the Magistrate Judge did not abuse his discretion in finding that Kmart failed to show that substantial prejudice would not result from the filing of the amended report.

### 3. Availability of Continuance to Cure Any Resulting Prejudice from Submission of Amended Expert Report

Finally, Kmart challenges the Magistrate Judge's finding that Kmart failed to make a compelling explanation for its failure to provide a timely, accurate expert disclosure, and thus, that a continuance of the trial date and further extension of discovery deadlines would not be proper. Kmart argues that a continuance of the scheduling deadlines would cure any potential prejudice to Defendants. Kmart further argues that without leave to file the proposed amended Krewson report, Kmart would suffer prejudice, because it would have to base its case on Krewson's initial flawed report. The Court finds that the Magistrate Judge did not err in concluding that a continuance would not cure resulting prejudice. As the Magistrate Judge pointed out, the absence of an adequate explanation for the failure to provide timely, accurate expert disclosure coupled with the potential prejudice to Defendants mitigates against allowing a continuance. *See, e.g., Izaguirre v. Ugland Marine Mgmt. AS*, No. H–11–4195, 2012 WL 4104791, at *3 (S.D. Tex. 2012); *West v. Drury Co.*, No. 2:07-CV-215-P-A, 2008 WL 5169682, at *3 (N.D. Miss. Dec. 9, 2008).

Because Kmart has not demonstrated that the Magistrate Judge's findings were clearly erroneous or that his conclusions were contrary to law, the Court finds that the Magistrate Judge's Order [213] denying Kmart's initial motion for leave [176] to file the proposed amended Krewson report should be upheld. Thus, Kmart's motion to appeal [227] should be denied. The Court

now turns to Kmart's recent motion for leave [271] to file the newly proposed amended Krewson report.

## Kmart's Motion for Leave to File Newly Proposed Amended Krewson Report

With respect to Kmart's motion for leave [271] to file the newly amended Krewson report, the Court initially addresses Defendants' request for oral argument on the motion. The Court is of the opinion that oral argument is not necessary to a resolution of the motion. Given the geographical location of counsel and the delay that would result from setting oral argument, the Court is of the opinion that oral argument is not warranted and should be denied. The Court now turns to the other issues in the present motion.

Kmart contends that in the newly proposed amended report Krewson corrects the HEC-RAS flow data and the flow data discrepancy that appeared in his original report from 3,702 cubic feet per second to 5,202 cubic feet per second. Additionally, Kmart contends that Krewson corrects the Manning's N values included in the original report to reflect the conditions of the channel of Elam Creek and the flooding depths occurring at the time of the loss to the Kmart store. Kmart states that the newly proposed amended report pertains to re-calculated runs using the same scenarios described in Krewson's initial report and modeling. Kmart maintains that in his newly proposed amended report, Krewson does not use the re-run modeling he used in the first proposed amended report. Thus, Kmart contends that the Court should grant its motion for leave to file the newly proposed amended report.

In Defendants' joint response to Kmart's motion for leave to file the newly proposed amended Krewson report, Defendants maintain that Krewson is attempting to change his model, report, and conclusions without any explanation. Defendants maintain that Krewson not only

corrects the flow rate he used in his initial report, but also selects entirely new Manning's N data to represent Elam Creek—all of which dramatically revises his conclusions, including altering certain key facts in this case from his original model. Defendants maintain that because the newly proposed amended report does not correct any mathematical computations, Kmart's motion for leave should be denied. Defendants further maintain that even if the Court allows the submission, the Court should restrict the amendment to changes to the flood flow rate used in the calculations, as that was the sole relief requested before the Magistrate Judge in the earlier motion for leave.

Defendants point to specific discrepancies among the three Krewson reports. Defendants maintain that Krewson opined in his initial report that Kroger's partial presence in the regulatory floodway caused a one-foot increase in water depth; that Krewson opines in the first proposed amended report that Kroger's partial presence in the regulatory floodway caused no change in water depth; but that Krewson opines in the newly proposed amended report that Kroger's partial presence in the regulatory floodway caused a two-inch increase in water depth. Next, Defendants maintain that Krewson made no opinion in his initial report about any increase in water flow and velocity caused by Kroger's presence; that Krewson opines in the first proposed amended report that Kroger's presence reduced the overbank width of flow by 209 feet and increased velocity by 20% and that the presence of Kroger and other buildings increased the impact and depth of the flooding; but that Krewson opines in the newly proposed amended report that Kroger's partial presence in the floodway reduced the overbank width of flow by 193 feet and increased velocity by 16%, and that the presence of Kroger reduced the flooding width resulting in increased velocities and the impact on the Kmart store. Defendants further highlight other discrepancies in flooding data used by Krewson in developing his report, pointing to the fact that in Krewson's initial report,

he used a water surface elevation from a FIRM panel (432.2), but in the latest report, uses a LOMR 100-year flood elevation (432.4). In both reports, Krewson concludes that if the building had been constructed at the particular water surface elevation flooding would not have occurred.

Defendants further contend that although the parties have discovered no new information concerning the condition of Elam Creek since Krewson's initial report was filed, in Krewson's newly proposed amended report, he has run HEC-RAS models with Manning's N values which alter the conditions of Elam Creek considerably from the values Krewson used in his initial report. Defendants contend that Krewson has inexplicably tripled the value given to the overgrown creek when compared with his September 2012 report. Defendants maintain that these changes have altered Kmart's theory of the case.

Finally, Defendants reiterate earlier arguments challenging the first proposed amended Krewson report. Specifically, Defendants also argue with respect to the newly proposed amended Krewson report that the same should not be allowed, because the newly proposed report is untimely under Rule 26 of the Federal Rules of Civil Procedure and Kmart has failed to demonstrate good cause for the delay in submitting the report. Defendants point to the two-month delay after Krewson's deposition before Kmart attempted to submit the proposed first amended report, as well as the more-than-five-month delay after Krewson's deposition before Kmart attempted to submit the newly proposed amended report. Defendants further cite Kmart's failure to detect the inconsistent flow rates prior to Krewson's deposition and Kmart's failure to provide a reason for changing the values that represent Elam Creek.

Kmart contends in reply that Krewson's newly proposed amended report corrects the flood flow rates and that the Manning's N values had to be adjusted when Krewson corrected the flood

flow rates to maintain the reliability of his model. Kmart further contends that when running HEC-RAS models, if one value is changed, other values might also need to be changed to maintain the validity of the model. And in this case, Kmart maintains, the Manning's N values that were used for the initial report ceased to be representative, because they were developed to correlate with the mistaken lower flow rate given in the initial report. Thus, Kmart maintains, Krewson had to re-calibrate the model by adjusting the Manning's N values based on the higher flow rate. Kmart further maintains that the conclusions in the newly proposed amended report verify Kmart's allegations against Defendants concerning the neighboring Kroger store. Kmart maintains that Krewson's conclusion in the newly proposed amended report would have to be different from his conclusion in the initial report, because the values he used in the initial report were incorrect. Next, Kmart maintains that its submission of the newly proposed amended report is timely, because the Court's previous Order provided that the Court would consider allowing an amendment to the initial report based on correction of mathematical errors only. Finally, Kmart reiterates some of its earlier arguments that it had good cause for the delay in correcting Krewson's report. Kmart maintains that it was not easy to discover the errors in Krewson's initial report. Kmart states that the results of the initial HEC-RAS runs did not raise any suspicion regarding the accuracy of the runs, because the finding that the Kroger store caused a one-foot rise in the flood level was consistent with FEMA's determination that the Kroger store was in a floodway—which lent credibility to Krewson's findings.

Kmart maintains that it should not be bound to provide incorrect data to the jury and should not be precluded from providing correct data to the jury when Krewson's errors have been discovered and corrected in advance of trial. Kmart maintains that its theory of causation has not

changed since the inception of the case. Kmart further maintains that Defendants' experts do not even know the correct peak discharge figure to apply to determine the potential impact of the Kroger store, as they have testified they have not performed any modeling to determine the impact of the Kroger store on the flooding at the Kmart store. Kmart also maintains that Defendants will not need to retain any new experts, as their designated experts are fully aware of the issues and errors in Krewson's initial report. Finally, Kmart requests a continuance of the trial date, maintaining that a continuance would truly cure any potential prejudice to Defendants that might result from the submission of the newly amended report.

In reviewing all these arguments, the Court is of the opinion that Kmart's motion for leave [271] to file the newly proposed amended Krewson report is not well taken. The Court incorporates its reasoning concerning the earlier filed motion for leave to file the first proposed amended Krewson report. The proposed amendments in the newly proposed amended report—though fewer in number than those in the first proposed amended report—present the same problems as did the first proposed report. Because Krewson's errors in the initial report are so substantial, Krewson cannot merely correct mathematical errors and revise numerical conclusions; he must revise his conclusions, and accordingly, Kmart must revise its theory of the case. The new theory of liability scarcely resembles the earlier theory—except that it involves damages to the Corinth Kmart store and a lot of flood water. Allowing the new theory to be introduced this late in the litigation would undoubtedly result in substantial prejudice to Defendants, who would necessarily encounter substantial costs to rebut Krewson's revised opinions and conclusions.

As stated above, Rule 16 of the Federal Rules of Civil Procedure requires good cause and the judge's consent. FED. R. CIV. P. 16(b)(4). The errors in the initial Krewson report were unfortunate. However, Kmart should have discovered the errors earlier with due diligence. No continuance would cure the costs and time the parties would incur to try this case on a new theory of liability. The Court finds in its discretion that Kmart's motion for leave [271] to file the newly proposed amended Krewson report should be denied.

### C. Conclusion

Therefore, Plaintiff Kmart Corporation's motion to appeal [227] the United States Magistrate Judge's denial of its motion for leave to file the proposed amended report of its engineering expert, John R. Krewson, is **DENIED**, and the United States Magistrate Judge's Order [213] denying leave to file the report is **AFFIRMED**. In addition, Plaintiff Kmart Corporation's motion for leave [271] to file the newly proposed amended Krewson report is **DENIED**.

A separate order in accordance with this opinion will issue this day.

THIS, ___18th___ day of December, 2013.

_____
SENIOR JUDGE