UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KMART CORPORATION                                                     PLAINTIFF

v.                                          CIVIL ACTION NO. 1:11-CV-00103-GHD-DAS

THE KROGER CO.; E & A SOUTHEAST
LIMITED PARTNERSHIP; and
KANSAS CITY SOUTHERN RAILWAY COMPANY                 DEFENDANTS

<u>**MEMORANDUM OPINION GRANTING DEFENDANT KANSAS CITY SOUTHERN
RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT**</u>

Presently before the Court is Defendant Kansas City Southern Railway Company's motion

for summary judgment [253] concerning the negligence claim against it.  Upon due consideration,

the Court finds the motion should be granted.

*A.  Factual and Procedural Background*

The Corinth, Mississippi Kroger store and Kmart store are neighboring tenants in the

Fulton Crossing Shopping Center.  In May of 2010, heavy rain pelted the Corinth area, causing

nearby Elam Creek to flood.  The Corinth Kmart store sustained extensive flood damage and was

closed for repairs from the time of the May 2010 flood until February 2011, when the store

reopened for business.  The Corinth Kmart store then incurred further additional costs to prevent

subsequent damage from another anticipated flood event.

Kmart Corporation ("Kmart") brings this action against Defendants The Kroger Co.; E &

A Southeast Limited Partnership; and Kansas City Southern Railway Company ("KCSR") to

recover for the flood damage sustained by the Corinth Kmart store which Kmart alleges was

1

caused by actions and omissions of Defendants.[1]  As the present motion for summary judgment [253] concerns Kmart's sole claim against KCSR, the Court will focus its attention on that claim.

On July 25, 2013, Kmart filed a motion for leave to file a proposed amended report of its designated engineering expert, John R. Krewson, to recalculate the estimated water level to correct prior inaccuracies in Krewson's initial report, and in so doing, to change Kmart's theory of the case.  On September 27, 2013, the Court entered an Order [243] stating that it would consider a limited amendment of only mathematical errors to the Krewson report.  Kmart filed another motion for leave [271] to file a newly proposed amended Krewson report and attached the same for the Court's consideration.  After careful consideration of the newly proposed amended report, the Court denied Kmart's request to amend the Krewson report.  Accordingly, when this memorandum opinion references the Krewson report, the opinion refers to Krewson's initial report, unless otherwise indicated.

On October 7, 2013, KCSR filed the present motion for summary judgment [253].  Kmart has filed a response, and KCSR has filed a reply.  The matter is now ripe for review.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  *See* FED. R. CIV. P. 56(a); *Weaver v. CCA*

---

[1] Although Kmart also initially brought this action against the Federal Emergency Management Agency ("FEMA") and the City of Corinth, both have since been dismissed from the case on immunity grounds.  *See* Ct.'s Order [50] & Mem. Op. [51] Granting FEMA's Mot. Dismiss; Ct.'s Order [209] & Mem. Op. [210] Granting City of Corinth's Mot. Dismiss.  Although Kmart additionally brought this action against Fulton Improvements, LLC, the Court has recently granted Fulton Improvements, LLC's motion for summary judgment [248], finding that no genuine dispute of material fact was present and that judgment as a matter of law was proper on the claims against Fulton Improvements, LLC.

*Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548 (internal quotation marks omitted). *Accord Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### C. Analysis and Discussion

A plaintiff asserting a negligence claim must ultimately prove the essential elements of duty, breach of duty, proximate causation, and damages. *Cascio v. Alfa Mut. Ins. Co.*, No. 2012–CA–01300–COA, 2013 WL 6383041 (Miss. Ct. App. Dec. 6, 2013) (citing *Ladner v. Holland*, 90 So. 3d 655, 659 (¶ 13) (Miss. Ct. App. 2012) (in turn citing *Price v. Park Mgmt. Inc.*, 831 So. 2d 550, 551(¶ 5) (Miss. 2002))). Kmart asserts a single theory of recovery in its negligence claim against KCSR: that KCSR negligently "failed to maintain a railroad underpass in the vicinity of [the Kmart store] by leaving it cluttered with debris, which prevented water flow and displacement, thereby contributing to" the Kmart store's flood damages and "other flood-related costs." Kmart's Compl. [1] ¶¶ 18, 36–37. Specifically, Kmart alleges that "KCSR permitted excessive debris to collect at its railroad bridge at mile 328.13 over Elam Creek and that the debris blockage contributed to flooding damage at Kmart's store." Kmart's Mem. Br. Supp. Resp. Opp'n to KCSR's MSJ [293] at 1.

In its motion for summary judgment [253], KCSR argues that Kmart has failed to present evidence of excessive debris under KCSR's bridge at the time of the flood and has failed to carry its burden on breach of duty or proximate causation. Thus, KCSR argues that summary judgment is proper. The Court finds this argument to be well taken.

Kmart alleges that KCSR breached its duty to reasonably maintain the railroad underpass in the vicinity of the Kmart store by allowing it to become cluttered with debris. Specifically, Kmart alleges that KCSR breached its duty of reasonable care to Kmart, as well as its duty under the City of Corinth's Code of Ordinances to refrain from obstructing the drainage of the City.

4

KCSR argues that Kmart cannot show that KCSR breached its duty to reasonably maintain the area beneath its Elam Creek bridge free of excessive debris or that KCSR breached its duty to the City to refrain from obstructing its drainage. KCSR maintains that the only evidence in the record is that KCSR inspected and maintained the bridge in a reasonable manner in accordance with all of its internal policies and with Federal Railroad Administration ("FRA") regulations and industry standards. KCSR further contends that Kmart's retained engineering expert, John R. Krewson, is the only witness that Kmart has identified to testify as to KCSR's alleged negligence, and that Krewson, who has no railroad experience, is not qualified to offer expert testimony as to the reasonableness of KCSR's maintenance program and has set forth no such opinion in his report.

Kmart argues in response that it retained Krewson to investigate the causes of flooding at the Kmart store, that Krewson visited the site of the KCSR railroad underpass after the flood and noted that there was a "considerable debris field" at the underpass and that the "debris blocked approximately the lower quarter of the bridge opening," and that Krewson took a photo of the alleged debris. *See* Krewson Report [292-1] at 5. Kmart further states that Krewson's "conclusion that there was an impact of the railroad underpass on the flooding is based on his expertise and understanding that obstructions downstream of the Kmart store impeded the flow of water during the storm, causing a backup of floodwater, which increased the depth of flooding at Kmart's store." Kmart's Mem. Br. Supp. Resp. Opp'n to KCSR's MSJ [293] at 2–3. Kmart indicates that in the deposition of Krewson, wherein it was revealed that his models contained inconsistent flow rates and were incorrect, Krewson was shown a photograph apparently taken on the date of the flood depicting the KCSR railroad bridge covered by floodwater and showing a lack

5

of floating debris in that area. Kmart argues that the lack of floating debris suggests that debris found behind the bridge after the flood was present prior to the flooding and that because the debris did not rise and float off during the flood it was likely there long enough for the debris to become embedded behind the bridge.

The Court finds as follows. KCSR has presented evidence that it met and exceeded its own policies promulgated under federal guidelines for inspecting its bridges for debris and acting promptly to maintain its bridges once aware of any debris. The FRA is charged with ensuring railroad compliance with the many applicable regulations promulgated pursuant to the Federal Railroad Safety Act ("FRSA"). *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 337 (5th Cir. 2008). At the time of the subject flood, the FRA had in effect an advisory statement, which "d[id] not have the force of regulations" but which suggested that railroads develop and implement programs to ensure the safety of railroad bridges. *See* 49 C.F.R. § 213 (Docket No. FRA-2008-0158) (Policy on the Safety of Railroad Bridges). Although the FRA suggested that railroads establish the frequency of bridge inspections, the FRA did not mandate any particular inspection frequency. *See id.*[2]

---

[2] After the subject flood, federal regulations issued by the Secretary pursuant to FRSA and codified at 49 C.F.R. § 237.101 established Bridge Safety Standards and provided in pertinent part the following:

> (a) Each bridge management program shall include a provision for scheduling an inspection for each bridge in railroad service at least once in each calendar year, with not more than 540 days between any successive inspections.

> (b) A bridge shall be inspected more frequently than provided for in the bridge management program when a railroad bridge engineer determines that such inspection frequency is necessary considering conditions noted on prior inspections, the type and configuration of the bridge, and the weight and frequency of traffic carried on the bridge.

49 C.F.R. § 237.101(a)–(b) (emphases added). KCSR's Director of Bridge Maintenance, Michael E. Schmidt, states in his sworn affidavit attached to KCSR's motion for summary judgment that KCSR now inspects the subject railroad track at least once a week. Schmidt Aff. [253-14] ¶ 3.

KCSR contends that at the time of the subject flood—in accordance with the FRA's advisory statement to adhere to a program to ensure to safety of railroad bridges—KCSR's internal policies required that KCSR bridge inspectors inspect the bridges in their assigned territories once per calendar year "as a minimum" and noted that "[m]ore frequent inspection will be made if conditions warrant." KCSR Bridge Inspection Procedures [253-12] at 1; KCSR Maint. of Way & Signal Dep't Rules [253-13] at 2.[3] KCSR's internal policies further required the bridge inspectors to "[c]orrect minor deficiencies discovered in the course of their inspection" and "[i]nform the bridge and building foremen working near any bridge or structure requiring prompt repairs." KCSR Maint. of Way & Signal Dep't Rules [253-13] at 2. KCSR's internal policies provided that during the course of routine track inspections the track inspector "is responsible for observation of bridges for accumulation of driftwood and sedimentation and/or other unusual conditions." KCSR Maint. of Way Engineering Dep't Procedure, On-Track Inspection Procedures [253-15] at 2, 11.3. KCSR's Rule 30(b)(6) representative, Michael S. Schmidt, who is the Director of Bridge Maintenance for KCSR, testifies in his deposition that the subject bridge first became part of his responsibility as then-bridge inspector in 2005. *See* KCSR R. 30(b)(6) Dep. [253-2] at 18. Schmidt testifies that he became a bridge supervisor in approximately 2008. *Id.* KCSR further cites to Schmidt's sworn affidavit, wherein he states that "it was KCSR's internal policy to inspect bridges at least one time per year. However, at that time and before, KCSR exceeded its own policy of performing an annual inspection of its bridges by routinely inspecting its bridges, including the Elam Creek bridge in Corinth, Mississippi, two (2) times per

---

[3] KCSR internal policies further stated that "[s]ome conditions on railroad bridges may warrant more frequent inspections" and gave the examples of "[u]nusual occurrences such as bridge strikes by vehicles or marine traffic, seismic events, floods, derailments[,] or any type of impact." KCSR Bridge Inspection Procedures [253-12] at 1.

year, approximately every six (6) months." Schmidt Aff. [253-14] ¶ 4. KCSR further maintains that its policy required that bridge crews, maintenance of way, or any other employees working in the vicinity of a particular bridge be on the lookout for problems "that would hinder the safe movement of rail traffic," and that if excessive debris under a bridge was observed the employee was to report the debris so that it could be removed. *See* KCSR R. 30(b)(6) Dep. [253-2] at 180– 81. KCSR contends that in the eighteen months preceding the subject flood, KCSR bridge inspectors conducted inspections of the Elam Creek bridge approximately every six months—on January 21, 2009; June 23, 2009; and January 6, 2010—and that no problems with excessive debris were noted on these dates; KCSR attaches the bridge inspection reports to its motion for summary judgment indicating as such. *See* KCSR Bridge Inspection Reports [253-16]. Finally, with regard to this issue, KCSR states that it was not aware of any excessive debris accumulation beneath the bridge in the weeks or days prior to the flood and had received no complaints of debris at any time prior to the subject flood that would have put KCSR on notice of any excessive debris at that location. *See* KCSR Resps. to Kmart's Interrogs. [253-18] at 5; KCSR R. 30(b)(6) Dep. [253-2] at 33–64.

Although Kmart argues that KCSR has breached its duty to maintain the railroad underpass free from debris, Kmart offers little to no evidence in support of this argument. Specifically, Kmart states that it has "presented competent evidence in the form of Mr. Krewson's testimony which demonstrates that KCSR failed to keep the railroad underpass free from debris prior to the [subject flood]," and that in so doing KCSR breached its duty to Kmart to maintain the underpass, as well as its duty to the City of Corinth to refrain from obstructing the drainage of the City. Kmart's Mem. Br. Supp. Resp. Opp'n to KCSR's MSJ [293] at 9. In particular, Kmart apparently

8

relies on the statement of Krewson that upon his investigation after the flood he noted "a considerable debris field . . . upstream of the bridge" which "blocked approximately the lower quarter of the bridge opening." Krewson Report [292-1] at 6. Kmart also appears to strongly rely on Krewson's statement in his report that "Mr. David Huwe, the Director of Community Development and Planning for the City of Corinth[,] stated during an interview in his office that the railroad had a poor record of maintenance and that the debris at the railroad bridge had been an ongoing problem for some time prior to the flood event." *See id.* at 6–7. However, Krewson's statement concerning what Huwe told him, used for the truth of the matter it asserts, is inadmissible hearsay. Further, as KCSR points out, in Huwe's deposition, he testifies that he had not visited the bridge prior to the subject flood and that his idea that the debris at the railroad bridge had been a problem prior to the flood stemmed from something he had heard someone else say; Huwe further testifies that he was not sure who that person was. Huwe Dep. [330-5] at 158–59. Huwe apparently has no personal knowledge of these matters. Thus, the Court cannot consider this particular statement by Krewson concerning Huwe, nor can it consider Huwe's statement regarding what someone else told him, in support of Kmart's breach-of-duty argument. As this is Kmart's sole argument against summary judgment on the breach element of its negligence claim against KCSR, the Court finds that Kmart has failed to raise a genuine dispute of material fact with respect to whether KCSR breached its duty to maintain the railroad underpass free from debris or that KCSR breached its duty to the City to refrain from obstructing the City's drainage, and thus, that summary judgment is appropriate on the negligence claim at KCSR. However, even assuming, *arguendo*, that Plaintiff has raised a genuine dispute of fact with respect to breach of duty, the negligence claim fails on other grounds, as well.

Even assuming, *arguendo*, that KCSR breached a duty to maintain its railroad underpass free of excessive debris, Kmart fails to show that such debris existed at the time of the subject flood, and that even if such debris existed, how any such breach of duty proximately caused Kmart's flood damage and other flood-related costs.

KCSR maintains that Plaintiff has no evidence that any debris under the KCSR bridge caused or contributed to Kmart's flood damages. Specifically, KCSR argues that Kmart relies solely on Krewson's testimony to establish causation, but Krewson did not model KCSR's bridge or the alleged debris, and thus, Krewson cannot testify as to whether the KCSR bridge caused or contributed to flooding at the Kmart store.

Kmart argues in response that the testimony of KCSR's retained expert, Blake Mendrop, is inadmissible because it is based on data that does not accurately reflect the conditions of the KCSR bridge or the area between the bridge and the Kmart store at the time of the subject flood, but instead reflects conditions that existed more than thirty years before the subject flood. Although the Court cannot weigh evidence on summary judgment, the Court notes that the two experts contradict each other on the issue of whether debris in the underpass could have caused or contributed to Kmart's flood damage. Conflicting testimony does not destroy a question of fact. However, to survive summary judgment, Kmart would first have to raise a question of fact through competent summary judgment evidence. The Court finds upon careful reflection that Kmart has not done so.

Kmart relies on the report and testimony of its retained expert, Krewson, to establish causation. Krewson states that in his report he ran a model assuming a fully maintained channel with no obstructions or encroachments in the floodway, Krewson Report [292-1] at 8, but did not

10

include the KCSR bridge in his report, Krewson Dep. [253-8] at 286–87. Specifically, Krewson testifies in his deposition: "I assumed no bridge at the time I ran my model. . . . I didn't have anything in the models as far as blockage [attributed to KCSR]." Krewson Dep. [253-8] at 286–87. Krewson concludes in his report from the model he ran that "debris in the channel increased the depth of flooding causing increased damage to Kmart" and lists a failure to maintain the creek channel as one of the causes of Kmart's flood damage. Krewson Report [292-1] at 8. Krewson testifies in his deposition that the debris field he saw could have been "all or part" of the flood or prior to the flood, Krewson Dep. [292-6] at 158; "[i]t's impossible to tell," *id.*; he "could not determine," *id.* at 159; and "the origination of [the debris] could not be determined based on my inspection," *id.* Finally, Krewson testifies that his opinion that debris was present under the bridge prior to the subject flood was "based on [his] conversation with Mr. Huwe." *Id.* at 259. The Court has already determined that Krewson's statement with respect to information Huwe told him from another source cannot be considered, as the same is not admissible evidence.

For all the foregoing reasons, Kmart has not raised a genuine dispute of fact that KCSR breached a duty to maintain the railroad overpass free from debris, that debris was present prior to the subject flood under the KCSR bridge, and that any debris caused or contributed to Kmart's flood damages. Accordingly, summary judgment is proper on Kmart's negligence claim against KCSR.

## *D. Conclusion*

In sum, Defendant Kansas City Southern Railway Company's motion for summary judgment [253] is **GRANTED** in its entirety; all claims against Defendant Kansas City Southern

11

Railway Company are **DISMISSED**; and Defendant Kansas City Southern Railway Company is **DISMISSED** as a party to the case.

An order in accordance with this opinion shall issue this day.

THIS, _____ day of January, 2014.

_____
SENIOR JUDGE