IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KMART CORPORATION                                                                  PLAINTIFF

v.                                                         CIVIL ACTION NO. 1:11-CV-00103-GHD-DAS

THE KROGER CO.                                                                     DEFENDANT

## MEMORANDUM OPINION GRANTING DEFENDANT THE KROGER CO.'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendant The Kroger Co.'s motion for summary judgment [269]. Upon due consideration, the Court finds the motion should be granted.

### A. Factual and Procedural Background

The Corinth, Mississippi Kroger store and Kmart store are neighboring tenants in the Fulton Crossing Shopping Center. In May of 2010, heavy rain pelted the Corinth area, causing nearby Elam Creek to flood. The Corinth Kmart store sustained extensive flood damage and was closed for repairs from the time of the May 2010 flood until February 2011, when the store reopened for business. The Corinth Kmart store then incurred further additional costs to prevent subsequent damage from another anticipated flood event.

Kmart Corporation ("Kmart") brings this action against Defendant The Kroger Co. ("Kroger") to recover for the flood damage sustained by the Corinth Kmart store allegedly caused by Kroger's actions and omissions.[1] Kmart alleges that the neighboring building occupied by the

---

[1] Although Kmart also initially brought this action against the Federal Emergency Management Agency ("FEMA"), the City of Corinth, Fulton Improvements, LLC, Kansas City Southern Railway Company, and E & A Southeast Limited Partnership, those parties have been dismissed from the case. The Court dismissed FEMA and the City of Corinth on immunity grounds. *See* Ct.'s Order [50] & Mem. Op. [51] Granting FEMA's Mot. Dismiss; Ct.'s Order [209] & Mem. Op. [210] Granting City of Corinth's Mot. Dismiss. In addition, the Court granted summary judgment to Fulton Improvements, LLC, Kansas City Southern Railway Company, and E & A Southeast Limited Partnership. *See* Ct.'s Order [354] & Mem. Op. [355] Granting Fulton's MSJ; Ct.'s Order [358] & Mem. Op. [359]

1

Corinth Kroger store was initially constructed halfway in the floodplain and halfway in the floodway. Kmart's Compl. [1] ¶ 15. Kmart further alleges that "[t]he Kroger store should have been leveled, but in 2005, the Kroger store was permitted to remain in the floodway" by a Letter of Map Revision ("LOMR") issued by the Federal Emergency Management Agency ("FEMA") and secured with the involvement of Kroger, among others. *Id.* Kmart avers that "Kroger's presence in the floodway caused a displacement of water and a rise in the water level, resulting in the flood damage" sustained by Kmart. *Id.* ¶ 16.

After answering the complaint, Kroger filed a motion for judgment on the pleadings [66] on September 26, 2012. The Court subsequently entered an Order [207] and memorandum opinion [208] granting the motion insofar as it pertained to Kmart's specific allegations that the LOMR was "improperly granted" and "improperly allowed the Kroger store to remain in the floodway," finding that those allegations could only be tenable against FEMA, which issued the LOMR but had been dismissed from the suit on immunity grounds. Thus, the Court found that Kmart was not entitled to offer evidence to prove those allegations. However, the Court denied the motion insofar as it pertained to Kmart's common-law negligence claim, finding that those allegations survived the early challenge under Rule 12(c) of the Federal Rules of Civil Procedure and that Kmart was entitled to offer evidence to prove its allegations of negligence.[2]

On July 25, 2013, Kmart filed a motion for leave to file a proposed amended report of its retained expert, John R. Krewson, to recalculate the estimated water level to correct prior

---

Granting KCSR's MSJ; Ct.'s Order [360] & Mem. Op. [361] Granting E & A's MSJ.

[2] A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion—that is, that the Court must determine upon a review of the pleadings whether the plaintiff has stated a valid claim for relief. *See Brown v. CitiMortgage, Inc.*, 472 F. App'x 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

inaccuracies in Krewson's initial report, and in so doing, to change Kmart's theory of the case. On September 27, 2013, the Court entered an Order [243] stating that it would consider a limited amendment of only mathematical errors to the Krewson report. Kmart filed another motion for leave [271] to file a newly proposed amended Krewson report and attached the same for the Court's consideration. After careful consideration of the newly proposed amended report, the Court denied Kmart's request to amend the Krewson report. Accordingly, when this memorandum opinion references the Krewson report, the opinion refers to Krewson's initial report, unless otherwise indicated.

On October 10, 2013, Kroger filed the present motion for summary judgment [269]. Kmart has filed a response, and Kroger has filed a reply. The matter is now ripe for review. The present motion for summary judgment concerns Kmart's negligence claim against Kroger, the sole remaining claim in the case *sub judice*.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

3

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548 (internal quotation marks omitted). *Accord Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

### C. *Analysis and Discussion*

In its motion for summary judgment [269], Kroger argues that Kmart's negligence claim against it should be dismissed on the following grounds: (1) Kmart can prove no act or omission of Kroger that will support a negligence claim; (2) Kmart cannot prove that Kroger had notice that its Corinth store was previously located in a floodway; (3) Kmart cannot show "but-for" causation as to Kroger; (4) Kmart's negligence claim against Kroger fails, because the terms of Kroger's lease prevented Kroger from "leveling" the building leased by it; (5) Kmart has no competent evidence

4

that the Kroger store caused flood damage to Kmart; and (6) Kroger cannot be held liable for the location of the building, because Kmart approved the building's location and the site development plans. For the reasons stated below, the Court finds that Kroger's arguments for dismissal are well taken.

A plaintiff asserting a negligence claim must ultimately prove the essential elements of duty, breach of duty, proximate causation, and damages. *Cascio v. Alfa Mut. Ins. Co.*, No. 2012–CA–01300–COA, 2013 WL 6383041 (Miss. Ct. App. Dec. 6, 2013) (citing *Ladner v. Holland*, 90 So. 3d 655, 659 (¶ 13) (Miss. Ct. App. 2012) (in turn citing *Price v. Park Mgmt. Inc.*, 831 So. 2d 550, 551(¶ 5) (Miss. 2002))). Kmart alleges that Kroger's actions or omissions constituted negligence and that this negligence proximately caused Kmart's flood damage. The Court addresses Kmart's specific allegations as follows.

### 1. Duty

As the Court stated in its prior opinion ruling on Kroger's motion for judgment on the pleadings [66], Kroger's status as a tenant of the building does not absolve it from liability.[3] Under general negligence principles, it is conceivable that Kroger and Kmart were neighboring store tenants with a duty of reasonable care to prevent harm to each other. *See, e.g., Rhaly v. Waste Mgmt. of Miss., Inc.*, 43 So. 3d 509, 511–12 (Miss. Ct. App. 2010) (waste management company serving store had duty of reasonable care to prevent damage to neighboring landowners' property from placing garbage receptacle too close to drainage ditch). However, it is well settled in Mississippi that a lessee does not have the right to alter his leased premises unless he has

---

[3] The Corinth Kroger store apparently has been a tenant of the building since September 11, 1998. See Kmart's Compl. [1] ¶¶ 29, 52; E & A's Answer [21] ¶ 29; Fulton's Answer [16] at 2; Kmart's Resp. to Kroger's Rule 12(c) Mot. [78] at 8. The Corinth Kmart store apparently has been a tenant of the building it occupies since December 17, 1991. See Mem. of Lease [66-3] at 1.

5

authority from his landlord to do so. *See Yazoo & M.V.R. Co. v. Sultan*, 63 So. 672, 674 (Miss. 1913) ("Without the authority from his landlord, we do not see that [the lessee] had the right to construct a new ditch through the land."). When this Court ruled on Kroger's motion for judgment on the pleadings, it could not determine based on the face of the pleadings whether Kroger was authorized to alter the leased premises under the terms of the leasehold agreements for the time periods in question. However, on summary judgment, these documents are before the Court.

Apparently, the grocery tenant in the building before Kroger, Bruno's, Inc., sold Kroger the assets and property used in its retail supermarket operation on or about April 28, 1994. *See* Asset Purchase Agreement [269-6] at 5–16. The asset purchase agreement provides in pertinent part: "To the best of [Bruno's, Inc.'s] knowledge, [Bruno's, Inc.] has complied in all respects with all federal, state, and local laws, rules[,] and regulations applicable to the Store and the Property, including but not limited to all environmental laws, rules[,] and regulations." *Id.* at 4. Subsequently, Kroger and Bruno's, Inc. apparently entered into an assignment of lease whereby Bruno's, Inc. assigned all its interest in the lease it had with its landlord to Kroger. *See* Assignment of Lease [269-6] at 20–24. Thus, Kroger and the landlord were in privity of contract with respect to the grocery tenant's lease agreement. Under the terms of that lease agreement, Kroger was not authorized to alter the leased premises in the manner suggested by Kmart (i.e. leveling the building or taking other flood-prevention measures). The lease agreement provides that matters regarding drainage and the approval of the construction of the building by all regulating authorities are the responsibility of the landlord; thus, Kroger was not authorized to take any such measures and would have been in breach of its lease with the landlord if it had done so.

*See* Lease Agreement [269-6] at 36 ("The Landlord shall provide proper and adequate water drainage . . . and shall operate and maintain the same in good repair and useable condition . . . during the term of this lease."). Further, any acts such as leveling the building would have been in violation of the lease agreement, which provides in pertinent part that "[Kroger] shall not perform any acts or carry on any practices which may injure the building." *See id.* at 29. Thus, it is clear from the language of the lease agreement that Kroger was not authorized to make alterations to the leased premises that would have affected drainage. As such, the Court finds that Kmart has failed to show that Kroger had a duty to Kmart to level the building or otherwise take specific measures to protect the neighboring Kmart from flood damage. However, even assuming, *arguendo*, that Kmart had shown that Kroger had such a duty, Kmart has failed to show either that Kroger breached the duty or that any such breach proximately caused Kmart's flood damages.

## 2. Breach

Kmart alleges that Kroger breached its duty of reasonable care to Kmart by improperly locating its store in a floodway or flood-prone area and improperly seeking the LOMR that removed the Kroger store from the regulatory floodway. The Court addresses these allegations as follows.

First, Kmart alleges that "Kroger improperly located its store <u>in a floodway</u> that existed at the time the store was constructed." Kmart's Compl. [1] ¶ 23 (emphasis added).[4] This allegation is not tenable against Kroger, because the LOMR issued by FEMA removed the Kroger store from the floodway due to "Inadvertent Inclusion in Floodway." *See* LOMR from FEMA [259-1] at 1. As the Court has stated, Kmart's allegation that the Kroger store was in the floodway falls squarely

---

[4] Kmart has clarified that "[it] has not sued Kroger for the <u>construction</u> of the Kroger store in a floodway," but for improperly locating its store in the floodway. *See* Kmart's Resp. Opp'n to Kroger's R. 12(c) Mot. [78] at 8 (emphasis added).

7

within the ambit of the National Flood Insurance Act of 1968 (the "NFIA"), 42 U.S.C. § 4001 *et seq.*, and would only be tenable against FEMA, which has the primary responsibility for issuing LOMRs as part of the National Flood Insurance Program. *See, e.g., Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 987–89 (8th Cir. 2010); *Coal. for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1102 (E.D. Cal. 2011). FEMA has already been dismissed from the case on immunity grounds. This allegation cannot survive against Kroger.

It is also notable that Kmart approved the location of the Kroger store and the site development plans, as set forth in some detail in the Court's prior Order and memorandum opinion ruling on Defendant Fulton Improvements, LLC's motion for summary judgment. Although Kmart contends that the Kroger building location and site plans were based on flawed site plans, Kmart has not presented evidence to raise a fact question. The clear language of Section 12 of the lease agreement between Kmart and the landlord of the property indicates that Kmart was aware of and agreed to (1) the landlord's intention to erect the part of the building where Kroger would later be located (the "grocery tenant" part of the building), (2) the location of the grocery tenant part of the building with respect to Kmart's location in the building, and (3) the size of the grocery tenant part of the building, as well as Kmart's agreement to lease the premises from the landlord with this understanding. *See* Lease Agreement [284-4] at 10, ¶ 12. This language precludes Kmart from presenting proof at trial on a negligence claim premised on the theory that Kroger should not have been located in the grocery tenant portion of the building, when Kmart has already indicated its agreement to such an arrangement, and according to the record, never indicated otherwise until after the flood damage it sustained.

In its response to Kroger's motion for summary judgment, Kmart maintains that Kroger can be liable for negligence if it knew that the building was in a flood-prone area yet took inadequate measures to protect Kmart against the risk of flooding. Kmart's Mem. Br. Supp. Resp. Opp'n to Kroger's MSJ [308] at 1. Kmart further maintains that "[e]ven if Kroger is not required by law to demolish its own store due to its presence in the floodway, if Kroger keeps its store there, it *is* obligated to maintain it in such a way that it is flood-neutral to its neighbor, Kmart." *Id.* at 1 (emphasis in original). As stated above, Kmart's allegation that the Kroger store was in a floodway is not tenable against Kroger. Thus, the Court turns to Kmart's allegation that Kroger had notice that the Kroger store was in a flood-prone area. As support for this contention, Kmart cites a *2010 Elam Draining District News* newsletter article, which it contends includes language from a reprint of a December 1, 2001 *Northeast Mississippi Daily Journal* article concerning a flooding event that year; Kmart maintains that these articles indicate that the 2010 flood giving rise to this suit was not an unprecedented flooding event for Corinth, Mississippi. However, "[n]ewspaper articles . . . are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." *James v. Texas Collin County*, 535 F.3d 365, 374 (5th Cir. 2008) (citing *Roberts v. City of Shreveport, La.*, 397 F.3d 287, 295 (5th Cir. 2005)). Also, the reprinted newspaper article published in the newsletter is inadmissible hearsay within hearsay. Kmart further cites to several communications that allegedly demonstrate that Kroger had notice that the building was in a flood-prone area, including a February 10, 2002 letter from a real estate specialist writing on behalf of Kroger to the Mayor of the City of Corinth, discussing two specific flooding events, referencing the "flooding problems experienced in the Corinth area," and noting that "the [Corinth] Kroger store . . . was

9

adversely affected by flooding." *See* Letter [307-6]. However, even if the Court found that Kmart had raised a fact issue that Kroger had notice that its store was in a flood-prone area, this would not sustain the negligence claim past summary judgment, because, as already discussed above, Kroger was not authorized to make any changes to the building to enhance Kmart's protection from flood damage.

Kmart further alleges that Kroger "improperly sought and received a [LOMR] from [FEMA] in 2005, thirteen years after its store was constructed" and that that LOMR "improperly permitted the Kroger store to remain in the floodway," Kmart's Compl. [1] ¶ 25; alternatively, Kmart alleges that Kroger was aware of the LOMR and knowingly and improperly allowed its store to remain in the floodway, *id.* ¶ 25. The Court need not address Kmart's allegations that the LOMR was improperly granted and "improperly permitted the Kroger store to remain in the floodway," as the Court has already found in its opinion and Order ruling on Kroger's motion for judgment on the pleadings that any such allegations fall squarely within the ambit of the NFIA and could only be tenable against FEMA, which was already dismissed from the case on immunity grounds. *See* Order Granting in Part & Denying in Part Kroger's R. 12(c) Mot. [207] at 1; Mem. Op. Granting in Part & Denying in Part Kroger's R. 12(c) Mot. [208] at 7. Further, Kmart has failed to present evidence supporting that Kroger <u>improperly</u> sought the LOMR. Thus, the Court finds that Kmart has failed to show that Kroger breached any duty to Kmart. However, even assuming, *arguendo*, that Kmart had shown that Kroger breached a duty to Kmart, Kmart has failed to show that any such breach proximately caused Kmart's flood damages.

### 3. Proximate Cause

Kmart alleges that Kroger's presence in the floodway caused a displacement of water and rise in the water level resulting in flood damage to the Kmart store and causing Kmart to incur expenses to prevent further water from entering the store. Kmart's Compl. [1] ¶¶ 26–28. However, Kmart has failed to present evidence to satisfy causation.

Kroger contends that Krewson testifies in his deposition that none of his opinions depend in any way on the identity of the actual tenant at the time of the subject flood. Kroger points to specific testimony by Krewson that he did not take into account any of the operations in the building and that his modeling does not depend on which tenant is operating inside the building. *See* Krewson Dep. [269-5] at 236–37. Kroger further points to Krewson's testimony that he was not aware of anything that Kroger did that would have increased a risk of flooding at the Kmart store. *See id.* at 237. Kroger also cites to the following deposition testimony of Menendez, Kmart's Rule 30(b)(6) representative:

> Q. All right. What did Kroger do in the building that raised the risk of flooding at the Kmart location?
>
> A. Continued to occupy it.
>
> Q. Anything else?
>
> A. Not at this time.

Kmart R. 30(b)(6) Dep. [269-2] at 192–93.

Finally, Kroger contends that Kmart cannot prove that the presence of the Kroger store caused a displacement of water or rise in the water level resulting in Kmart's flood damage, because Kmart has offered no reliable expert proof that the presence of the Kroger store in the building caused any damage to Kmart during the flood, given the flawed data in the report of

Kmart's retained engineering expert, John R. Krewson. Kroger refers to Krewson's admission during his deposition that he had made a mistake in flow data when modeling the effect of the Kroger store on the Kmart store; Kmart's subsequent statement that if it were not allowed to amend Krewson's report to reflect the correct flow data, Kmart "[would] be forced to prosecute its case with Mr. Krewson's <u>flawed</u> Initial Report," *see* Kmart's Mem. Br. Supp. Mot. Appeal Mag. Decision [228] at 9 (emphasis added); and the Court's subsequent denial of Kmart's request to amend Krewson's report. Kroger maintains that without an accurate Krewson report, Kmart has no basis for its allegations against Kroger.

Kmart agrees in its response that its proof on the effect of the Kroger store's presence on Kmart's flooding is through Krewson's report, but Kmart contends that it has explained through Krewson's testimony why the Kroger store contributed to Kmart's flooding. Kmart maintains that the Court entered an Order allowing Krewson to amend his report to correct the errors present in his initial report. This statement is incorrect. On September 27, 2013, the Court entered an Order [243] stating that it would <u>consider</u> a limited amendment of only mathematical errors to the Krewson report and requesting that Kmart submit the same for the Court's <u>consideration</u>. Although at the time of the parties' briefing on this motion for summary judgment the Court had not yet ruled on Kmart's request to allow the newly proposed amended report reflecting mathematical calculations, on December 18, 2013, the Court entered an Order [346] and memorandum opinion [347] denying Kmart's request. Thus, when Kmart states its proof on this issue is based on the Krewson report, it is relying in part on the flow data contained in the initial Krewson report, which both Kmart and Kroger agree is flawed. Kmart does not present any other evidence in support of its theory that the Kroger store's presence affected Kmart's flood damages.

The Court finds that Kmart's evidence on causation—specifically, Krewson's opinions in the flawed report—is insufficient to raise a fact issue for trial on causation on Kmart's claims against Kroger. Accordingly, the Court finds that Kroger is entitled to summary judgment on the sole remaining negligence claim.

## D. Conclusion

In sum, Defendant The Kroger Co.'s motion for summary judgment [269] is **GRANTED** in its entirety; all claims against Defendant The Kroger Co. are **DISMISSED**; Defendant The Kroger Co. is **DISMISSED** as a party to the case; and the case is **CLOSED**.[5]

An order in accordance with this opinion shall issue this day.

THIS, the 28th day of January, 2014.

_____
SENIOR JUDGE

---

[5] The following motions are **DENIED AS MOOT**: Defendant Kansas City Southern Railway Company's motion to exclude the testimony of John R. Krewson [240]; Defendant Fulton Improvement's LLC's motion to exclude the opinions of Plaintiff's Expert John Krewson [246]; Plaintiff Kmart Corporation's motion to exclude or limit the anticipated trial testimony of Robert H. Alexander [255]; Plaintiff Kmart Corporation's motion to exclude or limit the anticipated trial testimony of Robert Eley [257]; Defendant The Kroger Co.'s motion to exclude testimony of John R. Krewson [259]; Plaintiff Kmart Corporation's motion to exclude testimony of Kelly Blake Mendrop [261]; Plaintiff Kmart Corporation's motion to exclude testimony of James Monohan [263]; Defendant E & A Southeast Limited Partnership's motion to exclude opinions of John R. Krewson [265]; Defendant Kansas City Southern Railway Company's motion *in limine* [351]; Plaintiff Kmart Corporation's motion *in limine* [352]; and Defendants E & A Southeast Limited Partnership and The Kroger Co.'s joint motion *in limine* [356].